## LITCHFIELD *v.* LONDONDERRY.

The exclusion of cumulative evidence, upon a point already conclusively proved, furnishes no cause for setting aside a verdict.

A town is not liable for the support of the minor child of a father having his settlement therein, to another town that may support such child, unless such child be actually a pauper; and the child is not a pauper so long as the father has sufficient ability to maintain it.

A father is bound to support his legitimate minor children, so long as he has credit or property wherewith to do so without disposing of what must be immediately replaced in order to enable himself and family to live together.

The verdict of a jury is sufficient, although it be informal and do not find in terms the issue submitted to them, if it find the very matter on which the issue depends, and from which it is necessarily concluded.

ASSUMPSIT, under the statute, to recover the sum of $109.83, for expenses incurred in the support of Gilman Parker Melvin, an unemancipated minor son of Gilman Melvin, alleged to be a pauper, having his legal settlement in the defendant town, during the period of his insanity, between August 29, 1857, and August 7, 1858.

On trial the defendant denied that the alleged pauper was legally one, and claimed that on the 29th of August, 1857, when Gilman Melvin, the father, called upon Litchfield for the assistance then and afterwards furnished by that town to the alleged pauper, and for which compensation is sought in this suit, the father was of sufficient ability, and bound by law to support his minor son.

It appeared in evidence that when Litchfield undertook the support of the alleged pauper, upon the application of his father, the father owned and occupied, and still owns and occupies, about twenty-five acres of land, situate in Litchfield and Manchester, with a house, barn and shed thereon, for which he paid on the 6th of September, 1853, the sum of $350, subject then and still to a mortgage for $100 and interest, dated April 2, 1856; that he then had a cow, cheap horse, an old wagon, household furniture, and some farming tools, a small quantity of hay, about forty bushels of corn, fifty bushels of potatoes, three bushels of beans, and some other crops, of small value, growing.

The sum claimed to be recovered was the expense of removing and supporting the alleged pauper at the Asylum for the Insane during the period before mentioned, and the plaintiffs having proved his insanity by the attending physician and one or two persons who had had charge of him, showing that he was so insane as to require to be held by his attendants, the court ruled that, it appearing that the alleged pauper had been conveyed to the asylum by order of the selectmen of Litchfield, their action was conclusive upon the question of the propriety of his commitment, although no inquisition had been held by them, nor any written order of commitment made. The plaintiffs offering further evidence to show more fully the condition of the alleged pauper as to his insanity, the defendant objected thereto, as unnecessary and immaterial under the aforesaid ruling, and the court sustained the objection.

Upon the question of the ability and liability of the father to support his minor son, the court instructed the jury that a man was bound to support his wife and minor children as long as he could do it without depriving himself and family of the means of living, without disposing of what was essential to enable him and them to live—what if parted with must be immediately replaced to enable him and them to live together; that, if a man with a house and a little real estate, tools of his trade and necessary furniture and utensils, was reduced to want by sickness or other accident to himself, his wife, or minor children, he was not to be compelled to sell his house or land, the tools of his occupation, or necessary household furniture, and turn himself and family out of doors, destitute of every means of living, to entitle himself or his wife or children to be considered paupers within the meaning of the law; that the question for the jury to decide, upon all the evidence before them, was, whether Gilman Melvin, the father, on the 29th of August, 1857, had credit or property with which he might have relieved the necessities of his minor son for the time being, without disposing of what must have been immediately replaced in order to enable himself and family to live together; that if they found he had, the minor son was not to be considered a pauper, and they would return their verdict for the defendant.

The jury having remained in consultation until the court was about adjourning, the officer having them in charge was instructed, with the assent of both parties, to inform them that when they had agreed on a verdict, if it were before the reässembling of the court, they might reduce it to writing, seal it up, and then disperse, bringing their verdict into court at the commencement of the next session. The jury soon agreed, and then acted in accordance with their instructions. Upon their verdict

being opened and read, it was found to be signed by the foreman, and to read as follows :

" We, the jury, agree that Gilman Melvin was able to afford immediate relief at that time—the time the application was made." Whereupon a general verdict was taken for the defendant, under the direction of the court; which the plaintiff moved to set aside and for a new trial, because a general verdict for the defendant had been directed under these circumstances, and on account of supposed errors in the foregoing instructions of the court upon the question of the ability and liability of the father to support his minor son, and the exclusion of further evidence as to the insanity of the alleged pauper.

*W. C. & S. G. Clarke,* for the plaintiffs.

*S. N. Bell,* for the defendants.

FOWLER, J. The plaintiffs brought their suit to recover of the defendants the expense of removing an alleged pauper to the Asylum for the Insane, and supporting him there during the period of his insanity. By the provisions of the statute, the selectmen of Litchfield were authorized to send any insane pauper supported by that town to the asylum, and thereupon the town might recover the expense of the support of such pauper, at the asylum, of the town chargeable with his support. Rev. Stat., ch: 9, sec. 13. Under the ruling of the court, of the correctness of which there may be some doubt, but which was at least sufficiently favorable to the plaintiffs, that the actual *bonâ fide* removal of the alleged pauper to the asylum, by the selectmen of Litchfield, under the circumstances of this case, was conclusive upon the question of the propriety of his removal, and consequently upon his insanity, the fact of his insanity was definitively settled in favor of the plaintiffs, and the amount to be recov-

ered by them, if anything, fixed at the actual expense incurred by them in the removal and support of the alleged pauper at the asylum. Further evidence of the particular manifestations of the alleged pauper's insanity was, therefore, wholly superfluous and immaterial. It could only be cumulative evidence to establish what, under the ruling of the court, had already been conclusively proved. Nor could it have had any legitimate bearing on the question of the father's ability. That ability must necessarily have been equal to the requirements of the case, to the necessities of his son ; and these were, under the circumstances, the expenses of his removal to and support at the asylum for the time being. No multiplication of testimony could by possibility have increased the demand upon the father's ability, for that was limited to defraying the expenses of the removal and providing for the support of his son at the asylum.

The additional evidence offered upon the trial, as to the alleged pauper's insanity, was, therefore, properly excluded by the court.

Although it was decided, in *Rumney* v. *Keyes,* 7 N. H. 571, that a town in which a man resides may properly support his wife or minor children upon his credit, in the same manner that a trader might supply them with necessaries, and subsequently recover of him at common law compensation for the support thus furnished, it has never been seriously contended that one town could recover of another the expense of supporting a person alleged to have a settlement in the latter town, unless the person supported were, at the time of the support rendered, an actual pauper, within the meaning of the statute, upon which alone the liability of the latter town rests. In the present case, among other grounds of defence, the defendants resisted the plaintiffs' claim, because, they said that although the alleged pauper was insane, and had been properly removed to the asylum and supported there, they

were not liable for his support, since he was a minor, and his father had sufficient ability, and was bound to support him at common law.

The question of the father's ability, thus raised, was properly submitted to the jury for determination, and we are unable to discover any valid objection to the instructions of the court in relation to it. They were rather too favorable to the plaintiffs, but yet in substantial accordance with repeated decisions of our highest judicial tribunal, in relation to the common law liability of a parent to support his minor children. *Hillsborough* v. *Deering*, 4 N. H. 86 ; *Dover* v. *Murphy*, 4 N. H. 161; *Poplin* v. *Hawke*, 8 N. H. 305. In *Hillsborough* v. *Deering* it was laid down that a parent was bound at common law to support his unemancipated children as long as he had any means whatever to do it. The same doctrine is reäffirmed in *Dover* v. *Murphy.* This rule was, however, somewhat modified in *Poplin* v. *Hawke*, where it was announced that he is to be deemed a pauper who cannot relieve his immediate wants without disposing of property which is essential, and which, if parted with, must be immediately replaced to enable him to live. " No man," says *Richardson*, C. J., " is to be considered as a pauper who has credit or property with which he can, under the circumstances in which he is placed, immediately relieve his wants if he will." And again : "The question in this case was, then, had Thorn credit or property with which he might have relieved himself and family, without disposing of what must have been immediately replaced in order to enable him to live ? If he had, he was not to be considered a pauper. If he had not, then he was to be considered as a person entitled to relief under the statute. And the question should have been submitted to the jury with directions to that effect." In the case at bar, the precise question involved in *Poplin* v. *Hawke* was raised and submitted to the jury, with instruc-

tions even more favorable to the plaintiffs than those pre-
scribed by Chief Justice *Richardson*, and it seems to us
the plaintiffs have no just cause of complaint on this
account.

Nor would there seem to be any reasonable probability
that the jury could have misunderstood either the lan-
guage or the spirit of the instructions given them. The
court had ruled in their presence, that the removal of the
alleged pauper to the asylum, by the selectmen of Litch-
field, was conclusive both upon the fact of his insanity
and the propriety of his removal; and they must, there-
fore, have clearly understood that the ability of the father
to relieve the necessities of his minor son for the time
being, must, at least, have been such as to enable him to
defray the expense of his removal to the asylum, and
provide for his support there. With instructions, which
could hardly have been misunderstood, to find whether
the father had credit or property with which he might
have relieved the necessities of his minor son for the time
being, the jury found that the father was able to furnish
immediate relief, which, under the circumstances of the
case, can only be regarded as equivalent to finding that
the father was able to defray the expenses of his minor
son's removal to the asylum, and provide for his support
there. And it has not been suggested that this finding
was not fully authorized by the evidence. Indeed, the
case shows that the father had some two hundred and
fifty dollars' worth of real estate, besides stock, furniture,
crops, &c., and it is quite apparent, therefore, that the jury
might well have found that he had credit or property to
enable him to provide for the necessities of his son, the
whole amount of which, as claimed by the plaintiffs, had
been only $109.

Upon the verdict thus rendered a general verdict for
the defendants was rightly directed; for it was itself
equivalent to such a verdict. Although informal, and

not finding in terms the issue submitted to them, yet the verdict of the jury was a finding of the very matter upon which that issue depended. From it the issue was necessarily concluded; for if the father had, as the jury found he did have, sufficient ability to provide for the necessities of his minor son, at the time the plaintiffs furnished that son with the support for which they claimed to recover, the defendants could never have promised, under the provisions of the statute, to pay the plaintiffs therefor, because they could never have been liable thus to pay them. The fact found by the verdict being established, a general verdict for the defendants was a matter of law and of course, under the order or direction of the court. Com. Dig., Pl., S., 26, *et seq.*; Coke Litt. 217, *a; Holman* v. *Kingsbury,* 4 N. H. 104; *Pettes* v. *Bingham,* 10 N. H. 514; *Allen* v. *Aldrich,* 29 N. H. 63, and authorities; *Foster* v. *Jackson,* Hobart 54, *a; Hawks* v. *Crofton,* 2 Burr. 698; *Porter* v. *Rummery,* 10 Mass. 64; *Thompson* v. *Button,* 14 Johns. 84; 9 Mass. 316; 2 Johns. 210; 4 Johns. 213.

With these views of the rulings and instructions of the court, and of the effect of the finding of the jury, there must be

*Judgment upon the verdict.*